UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EDDIE SANCHEZ,

                      Plaintiff,                **ORDER**

    v.

                                            **01-CV-696F**

DR. CHENG YIN,                                    (Consent)

                      Defendant.

       In this Section 1983 action alleging an Eighth Amendment deliberate indifference claim against Defendant, Defendant, by papers filed April 11, 2003 (Doc. Nos. 22-25), moves for summary judgment ("Defendant's Motion"). Plaintiff's response was filed August 7, 2003 (Doc. No. 34) ("Plaintiff's Response").

       In essence, Plaintiff asserts that Defendant failed to adequately treat Plaintiff's broken leg when Plaintiff sought medical treatment at the Elmira Correctional Facility's infirmary on June 12, 2001, following a fight with another inmate. However, Defendant claims he was not on duty on June 12th and Plaintiff offers nothing to rebut Defendant's sworn affidavit so stating. Moreover, based on the evidence submitted in support of Defendant's motion, Plaintiff was seen by another physician at the infirmary on June 13, 2001, treated and an X-ray taken. Thereafter, on June 13th, Defendant examined Plaintiff and the X-ray and, based on the X-ray, Defendant treated Plaintiff for a broken distal fibula and medial tip. Defendant prescribed elevation, Motrin and a "long-leg cast," which was placed on Plaintiff's leg on June 14, 2001. According to Defendant, upon examination by Defendant, Plaintiff presented "no clinical" signs or symptoms including no tenderness at medial maleoulus." On June 18, 2001, at Defendant's

direction, Plaintiff was placed on walking pad and crutches.  Defendant released Plaintiff to his cell at that time and advised Plaintiff the long-leg cast would be removed at a later time.  On July 5, 2001, Plaintiff's long-leg cast was repaired, *i.e.*, the heel was replaced.  On July 12, 2001, Plaintiff's long-leg cast was replaced by a "short-leg cast."  At that time, Defendant recommended a follow-up examination in four weeks.  On August 1, 2001, Defendant examined Plaintiff and removed the cast.  Plaintiff was told by Defendant that Plaintiff would experience "some stiffness" in his leg.  However, Defendant found Plaintiff's ankle was not tender.  Plaintiff was told to "gradually increase his activity, and follow-up with [Defendant] as needed."  According to Defendant's affidavit, Plaintiff did not seek any such follow-up with Defendant, and Defendant has had no contact with Plaintiff since August 1, 2001.

After Plaintiff filed his lawsuit, Defendant attempted to schedule on April 5, 2002 an examination of Plaintiff to "update [Plaintiff's] condition."  However, Plaintiff refused to be examined at that time and allegedly stated to a corrections officer that he "has no problem."

A careful review of Plaintiff's Response demonstrates that Plaintiff offers no evidence or sworn statements in rebuttal to Defendant's statement of facts or, more significantly, to support the allegations in Plaintiff's amended complaint that, during a six day period following Plaintiff's initial appearance at the infirmary, Defendant failed to correctly and promptly diagnose and treat Plaintiff's broken leg.  Contrary to Plaintiff's allegation, Defendant placed Plaintiff's leg in the long-leg cast following Defendant's X-

2

ray of Plaintiff's leg on June 13, 2001, Defendant's first opportunity to do so.  The record further indicates Defendant intended to cast the leg in 2-3 days, ostensibly to permit the swelling around the injured ankle to subside and relieve the pain which according to the record, Plaintiff was then experiencing.  Nevertheless, as noted, according to Defendant and a review of Plaintiff's medical progress records, the long-leg cast was applied to Plaintiff's leg on June 14, 2001.  Plaintiff's contemporaneous treatment progress notes therefore corroborate Defendant's averment.  According to the progress notes, Plaintiff's cast was in place well before June 18, 2001, when according to Plaintiff's amended complaint, the long-let cast was first installed.  Even assuming, *arguendo*, some delay occurred before the cast was placed on Plaintiff's leg, taken as a whole the record is replete with documentation that Plaintiff received timely and continuous medical attention to his injury by Defendant and other prison medical staff.  Thus, even if Plaintiff's allegations were to have some conceivable factual basis, at best, his allegations would demonstrate only an arguable case of negligence, not deliberate indifference.

   In sum, reviewing the record in support of Defendant's Motion most favorably to Plaintiff, the record is devoid of any evidence that Defendant was deliberately indifferent to Plaintiff's medical needs in June 2001 or thereafter.  Rather, the record reveals Plaintiff received timely and proper medical care from Defendant at all relevant times.  There is no admissible evidence that warrants trial.

**CONCLUSION**

Based on the foregoing, Defendant's Motion, Doc. No. 22, is GRANTED. The Clerk of Court is directed to close the case.[1]

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: March 6, 2007
      Buffalo, New York

---

[1] Plaintiff's motion (Doc. No. 35) filed February 5, 2007, is DISMISSED as moot.